UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------X
                                                  :

ENA DOBSON,                            :
                                                  :
                        Plaintiff,     :         10 Civ. 6167 (KPF)
                                                    :
                        v.            :        OPINION AND ORDER
                                                    :

COMMISSIONER OF SOCIAL SECURITY,  :
                                                  :
                        Defendant. :
                                                  :
-------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  May 12, 2014

KATHERINE POLK FAILLA, District Judge:

      Plaintiff Ena Dobson, proceeding *pro se*, brings this action against the

Commissioner of Social Security[1] (the "Commissioner" or "Defendant") alleging

nonreceipt of her Social Security retirement checks from 2001 to 2005.

Pending before the Court is Defendant's motion to dismiss the Complaint for

lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure

12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6), or, in the

alternative, for summary judgment pursuant to Rule 56.  Defendant's motion is

granted.  As explained more fully below, the Commissioner's determination is

not eligible for administrative or judicial review and Plaintiff may not maintain

her suit here.

---

[1]      At the time this action was brought the Commissioner was Michael J. Astrue.
Commissioner Astrue has since stepped down and been succeeded by Acting
Commissioner Carolyn W. Colvin.

## BACKGROUND[2]

### A.   Factual Background

### 1.   Plaintiff's Social Security Retirement Benefits and Previous Interactions with SSA

The following facts are undisputed or, with respect to the issues on which Defendant has moved, construed in the light most favorable to Plaintiff.

Plaintiff Ena Dobson began receiving monthly Social Security benefit checks when she reached the age of 65.  (Compl., Attachment 1).  On or about May 20, 2008, Plaintiff visited a local Social Security Administration ("SSA") office and claimed that she had not received her benefit checks since 2001, a position she maintained despite being shown a number of documents purportedly indicating otherwise.  (Infiesta Decl. ¶ 3).  An SSA employee requested that photocopies of one of Plaintiff's benefit checks for each year from 2001 to 2008 be sent to Plaintiff.  (*Id.* at Ex. 1).

On September 18, 2008, Plaintiff contacted the SSA and indicated that she had received information explaining that the SSA had withheld her benefit payments from 2005 to 2008 to compensate for a previous overpayment.  She maintained nonetheless that she had received no benefit checks from 2001 to 2004.  (Infiesta Decl. ¶ 4 & Ex. 1; Def. 56.1 ¶ 2).[3]  Plaintiff then visited a local

---

[2]    The facts throughout are drawn from the Complaint (Dkt. #2) ("Compl."); Defendant's Statement of Undisputed Facts in Support of Its Motion for Summary Judgment (Dkt. #14) ("Def. 56.1"); and the Declaration of Julio Infiesta ("Infiesta Decl.") and exhibits attached thereto.  For convenience, Defendant's Memorandum of Law in Support of Its Motion to Dismiss or, in the Alternative, for Summary Judgment (Dkt. #13) is referred to as "Def. Br."; Plaintiff's Affirmation in Opposition to Defendant's Motion (Dkt. #34) is referred to as "Pl. Opp."

[3]    The record is not perfectly clear regarding the period during which Plaintiff alleges she did not receive Social Security payments.  Defendant indicates in two documents

SSA office on or about June 5, 2009, where she met with an employee identified in the record only as N. Tahirhagos.  (*See* Infiesta Decl. Ex. 1). Plaintiff again complained that she had not received her monthly Social Security benefit checks from 2001 through 2004.  (*Id.* at ¶ 5 & Ex. 1).  In particular, Plaintiff indicated she had not been satisfied with the outcome of prior complaints on this matter and demanded proof that SSA in fact sent the payments to her and that she in fact had cashed them.  (*Id.*).  The SSA employee Tahirhagos gave Plaintiff a "Request for Reconsideration" form to complete and recorded the following remarks internally:

> The Laconia office apparently has already processed the nonreceipt complaints but [Plaintiff] does not agree with the outcome so far. She insisted to file a recon[sideration] but I could not give her any valid determination date.…  I am filing a recon[sideration] for her for your review so that we can go from there.

(*Id.* at Ex. 1).[4]

Ultimately, Tahirhagos does not appear to have filed anything on Plaintiff's behalf; instead, Plaintiff filed a Request for Reconsideration form on or about July 2, 2009, indicating that she "did not receive any check from [illegible]/2001 through 12/2004."  (Infiesta Decl. Ex. 2). Plaintiff continued, "My first retirement check was received in March

---

submitted in support of this motion that the period of nonreceipt extended from 2001 to 2004.  (*See* Infiesta Decl. ¶ 4, Ex. 1; Def. 56.1 ¶ 2).  The Complaint, however, alleges nonpayment for "four year[s] from 2001–2005."  (Compl. 1).  The record also does not clarify whether the SSA withheld benefits in full or in part from 2005 to 2008.

[4]   While the Infiesta Declaration simply states that Tahirhagos gave Plaintiff a Request for Reconsideration form (Infiesta Decl. ¶ 5), Tahirhagos's internal remarks seem to indicate actually filing a reconsideration form on Plaintiff's behalf, though no such form appears in the record.

2008.  I am aware of the money kept for overpayment."  (*Id.*).  In a letter
dated January 13, 2010, Anne Jacobosky, SSA Assistant Regional
Commissioner, Processing Center Operations, responded to Plaintiff's
Request for Reconsideration.  (*Id.* at Ex. 3 (the "Jacobosky Letter")).  This
letter advised Plaintiff that the SSA interpreted her Request for
Reconsideration merely as a request for further information.  If Plaintiff
actually wished to request a reconsideration, the letter continued, she
should contact any SSA office within 30 days.  (Jacobosky Letter ¶ 1;
Infiesta Decl. ¶ 7).

   At some point during this sequence of events, Plaintiff filed with the SSA
a signed "Claim Against the United States for the Proceeds of a Government
Check."  (Infiesta Decl. Ex. 4).[5]  This form does not reference any specific check
or checks but, in response to the questions on the form, Plaintiff indicated that
she received, signed, and cashed "this check."  (*Id.*).  Plaintiff further indicated
that the check was cashed at a "Check Cashing Place," and that she "[c]annot
[r]emember" if someone else deposited this check to an account she could use.
(*Id.*).  Julio Infiesta, in his sworn affidavit, stated that "SSA took no action
regarding this claim, because plaintiff's responses indicated that she received,
signed and cash[ed] the check or checks being complained about."  (*Id.* at
¶ 11).

---

[5]      Plaintiff signed but did not date this form, and Defendant simply states that the form is
undated.  (Infiesta Decl. ¶ 11; Decl. 56.1 ¶ 9).  The form does, however, bear the
following notation typed in its upper left corner: "JAN-06-2010      08:44         SSA."
Whether this indicates that the SSA processed the form on January 6, 2010, at 8:44
a.m., or has some other meaning, is impossible to determine.

On or about February 4, 2010, Plaintiff again visited a local SSA office; records indicate that an SSA employee showed Plaintiff copies of checks from the disputed period indicating that Plaintiff had cashed them.  (Infiesta Decl. ¶ 8 & Ex. 1).  Plaintiff was not satisfied with this proof and insisted on filing a Request for Reconsideration.  (*Id.* at Ex. 1).  Plaintiff visited an SSA office for a fourth time on or about May 13, 2010, insisting once again that she had not received her benefits for the years 2001 through 2004.  (*Id.*).

SSA internal documentation dated July 6, 2010, indicates that the agency sent worksheets to Plaintiff identifying monthly benefits that had been withheld to recoup a previous overpayment to Plaintiff.  (Infiesta Decl. ¶ 9 & Ex. 1).  This documentation notes that Plaintiff's request for reconsideration dated February 4, 2010, was slated for processing.  (*Id.*).  SSA has not, as of this writing, processed Plaintiff's request, apparently "because SSA had information showing that [P]laintiff was paid the benefits she claimed she had not received."  (Def. 56.1 ¶ 8).

Specifically, the SSA obtained information from the Treasury Check Information System showing that Plaintiff had received monthly payments via direct deposit to her HSBC Bank account from January 1, 2001, through July 2, 2004.  (Infiesta Decl. Ex. 5).  The record indicates that these direct deposits were made to an account with an account number ending in 7660 and with the payee name "ENA DOBSON."  (*Id.*).  The record also contains copies of monthly benefit checks from August 9, 2004, through December 16, 2004, each made

out to Ena Dobson and endorsed with a signature strongly resembling Plaintiff's name.  (*Id.* at Ex. 6).

### 2.  Procedural Background

Plaintiff filed the Complaint in this action on August 17, 2010, alleging nonreceipt of her Social Security retirement checks "for four year[s] from 2001–2005."  (Compl., Attachment 1).  On March 28, 2011, after appropriate extensions of time to respond to the Complaint, Defendant filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim or, in the alternative, for summary judgment.  (Dkt. #12).  Plaintiff wrote the Court on May 31, 2011, asking for an extension of time to oppose Defendant's motion so that she could seek representation; she was granted until July 29, 2011.  (Dkt. #16).[6]  Plaintiff filed no opposition by this deadline.  On September 12, 2011, Plaintiff filed an application for *pro bono* counsel.  (Dkt. #18).  This application was not served on Defendant but, noting that the Government typically does not take a position on requests for *pro bono* counsel in cases of this type, the Court ordered the application to be docketed despite its procedural errors.  (*Id.*).

Twenty months later, Plaintiff having made no contact with the Court in the interval, the Court scheduled a conference for May 22, 2013, and Plaintiff

---

[6]     This matter was at that time before the Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, who referred it to the Honorable Henry B. Pitman, United States Magistrate Judge for the Southern District of New York.  It was reassigned to the Honorable Andrew L. Carter, Jr., United States District Judge for the Southern District of New York, on December 29, 2011.  (Dkt. #20).  It was transferred to the undersigned on June 25, 2013.  (Dkt. #25).

did not appear. (Dkt. #22). In response, the Court issued an order for Plaintiff to appear at a hearing to show cause demonstrating why the Complaint should not be dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). (Dkt. #23). Plaintiff wrote the Court the following week, advising that she had not received notice of the May 22, 2013 conference. (Dkt. #24).

Shortly thereafter, the Court issued an order adjourning the show cause hearing from June 28, 2013, to July 25, 2013. (Dkt. #26). This order was returned as undeliverable. The Court, making accommodations for Plaintiff's *pro se* status, exerted substantial effort to locate a valid address for Plaintiff. An order adjourning the show cause hearing to August 22, 2013, was mailed on July 23, 2013.

Both parties appeared at the hearing finally held on August 22, 2013. At that hearing the Court ordered Plaintiff to file a response to Defendant's motion by September 30, 2013. The Court also explained that Plaintiff could, if she chose, file a new application for *pro bono* counsel, but that it was impossible to guarantee that any *pro bono* lawyer would accept her case. Plaintiff filed a renewed application for *pro bono* counsel on September 5, 2013. By Order dated September 11, 2013, the Court granted Plaintiff's application but reminded her that whether a lawyer would choose to represent her was impossible to predict, and once again required her to file an opposition to Defendant's long-pending motion by September 30, 2013. (Dkt. #31).

By standing order of this District occasioned by the shutdown of the federal government, this case was then stayed pending the restoration of funding for the Department of Justice's operations.  No response from Plaintiff was forthcoming in the interim, despite the expiration of Plaintiff's time to oppose the motion, many times extended.  When that stay was lifted, the Court issued an order on October 17, 2013, granting a final extension of Plaintiff's time to oppose to November 1, 2013, in an effort to offer Plaintiff every possible courtesy.  (Dkt. #33).  On October 31, 2013, Plaintiff filed an affirmation in opposition to Defendant's motion.  (Dkt. #34).  On December 18, 2013, Defendant submitted a letter to the Court in lieu of a reply to Plaintiff's affirmation in opposition to Defendant's motion.  (Dkt. #35).

## DISCUSSION

**A.    Applicable Law**

**1.    Pro Se Parties**

It is well established that the submissions of a *pro se* litigant are to be construed liberally and interpreted "'to raise the strongest arguments that they *suggest.*'"  *Smith* v. *Levine*, 510 F. App'x 17, 20 (2d Cir. 2013) (summary order) (quoting *Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in *Triestman*)).  Put another way, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); *cf.* Fed. Rule Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

**2.      Motions to Dismiss Pursuant to Rule 12(b)(1)**

A federal court is a court of limited jurisdiction and, in order to hear a case, must ascertain whether it has jurisdiction over the underlying subject matter of the action.  *Bender* v. *Williamsport Area Sch. Dist.*, 475 U.S. 536, 541 (1986) ("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.").  This determination "is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).

When a defendant brings such a motion, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione* v. *Schoolman Transp. System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005); *see also Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Malike* v. *Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).  And although "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, ... jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison*, 547 F.3d at 170 (internal quotation marks and citations omitted).  Thus, in resolving a Rule 12(b)(1) motion, a district court "may refer to evidence outside the pleadings."  *Makarova*, 201 F.3d at 113.

### 3.     District Court Jurisdiction Over SSA Decisions

### a.     United States as Sovereign

"'[T]he United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"  *Lehman* v. *Nakshian*, 453 U.S. 156, 160 (1981) (quoting *United States* v. *Testan*, 424 U.S. 392, 399 (1976)) (second alteration in *Testan*).  And when the Government consents to be sued, such consent must be strictly observed and construed narrowly. *United States* v. *Nordic Village, Inc.*, 503 U.S. 30, 34 (1992).

### b.     Title II and XVI of the Social Security Act

Title II and Title XVI of the Social Security Act (the "Act") govern federal old-age, survivors, and disability insurance benefits and supplemental security income for the aged, blind, and disabled, respectively.  *See* 42 U.S.C. §§ 401-434 (Title II); 42 U.S.C. §§ 1381-1385 (Title XVI).  Claims arising under Title II or Title XVI, such as a claim for disability insurance benefits or Social Security retirement benefits, may not be heard by the federal courts except as explicitly permitted by the Act.  42 U.S.C. § 405(g), (h).  Section 405(g) states:

> Any individual, *after any final decision of the Commissioner of Social Security made after a hearing to which he was a party*, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.

42 U.S.C. § 405(g) (emphasis added).  And Section 405(h) clarifies that the remedy provided in Section 405(g) is exclusive: "No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided."  42 U.S.C. § 405(h).

Section 405(g) precludes judicial review absent a "final decision."  *See Califano* v. *Sanders*, 430 U.S. 99, 108 (1977).  This exhaustion requirement of a "final decision of the Commissioner of Social Security made after a hearing," 42 U.S.C. § 405(g), has been held to comprise two elements: (i) the jurisdictional, non-waivable requirement that a claim for benefits has been presented to the Commissioner, and (ii) the non-jurisdictional, waivable requirement that the administrative remedies prescribed by the Commissioner have been exhausted.  *See, e.g.*, *Mathews* v. *Eldridge,* 424 U.S. 319, 328-30 (1976).

### i.    The Jurisdictional Requirement

The first requirement, that a claim for benefits be presented, is "purely jurisdictional in the sense that it cannot be waived by the Commissioner in a particular case."  *Mathews*, 424 U.S. at 328 (internal quotation marks omitted). This requirement is easily satisfied and courts spend little time addressing it. *See, e.g.*, *Jones* v. *Califano*, 576 F.2d 12, 18 (2d Cir. 1978) ("It is undisputed that appellants, by filing claims with the SSA, have satisfied the non-waivable requirement."); *Bamberg* v. *Astrue*, No. 10 Civ. 6348 (CM) (THK), 2011 WL 4000898, at *4 (S.D.N.Y. Sept. 8, 2011) ("Plaintiff has presented both issues to

the Commissioner of Social Security — through his various requests for
reconsideration and his letter dated August 2, 2010.  The nonwaivable
requirement is therefore satisfied.").

### ii.    The Exhaustion Requirement

The second requirement is that the Commissioner render a "final
decision" so as "to satisfy the statutory exhaustion requirement."  *Mathews*,
424 U.S. at 330 (internal quotation marks omitted).  This requirement is
"waivable" or, as it has been sometimes put, not strictly jurisdictional, because
the Commissioner can waive it whenever she "satisfies [herself], at any stage of
the administrative process, that no further review is warranted either because
the internal needs of the agency are fulfilled or because the relief that is sought
is beyond [her] power to confer."  *Id.* at 330.

Even when the Commissioner does not consent to waiver of the
requirement, however, limited circumstances exist in which a court may excuse
nonexhaustion despite the Commissioner's objection.  *Mathews* v. *Diaz,* 426
U.S. 67, 76-77 (1976).  Courts have identified a number of circumstances in
which failure to exhaust may be excused, including situations where (i) the
claim at issue is collateral to a demand for benefits; (ii) exhaustion would be
futile; (iii) plaintiffs would suffer irreparable harm if required to exhaust; and
(iv) the claim presents a constitutional question unsuited to resolution by
administrative review.  *Mathews*, 424 U.S. at 330-32.  Beyond these explicit list
of circumstances in which nonexhaustion is not fatal to a claimant's quest for
judicial review, the Supreme Court has explained that the decision whether to

12

waive exhaustion "should also be guided by the policies underlying the exhaustion requirement."  *Bowen* v. *City of New York*, 476 U.S. 467, 484 (1986).

### iii.    SSA Administrative Review

Congress purposely left the term "final decision" undefined in the Act, leaving the meaning of the term for the Commissioner to "flesh out by regulation."  *Weinberger* v. *Salfi*, 422 U.S. 749, 767 (1975) (citing 42 U.S.C. § 405(a)).  The Commissioner's regulations provide that a claimant must complete a four-step administrative review process in order to receive a judicially reviewable final decision regarding claims under Title II or Title XVI of the Act.  20 C.F.R. §§ 404.900(a), 416.1400(a).[7]  The four steps are: (i) initial determination; (ii) reconsideration; (iii) Administrative Law Judge ("ALJ") decision; and (iv) Appeals Council review.  *See id.* §§ 404.900, 416.1400.[8]  If at any point in pursuing administrative review a claimant fails to take the next step within the time allotted — generally 60 days — the last rendered decision becomes binding and, absent a showing of good cause, precluded from judicial review.  *See* 20 C.F.R. §§ 404.900(b), 404.921, 416.1400(b), 416.1421.

An "initial determination," the first step in the administrative review process, is simply defined as a "determination[ ] [the SSA] make[s] that [is]

---

[7]    20 C.F.R. §§ 404.900-999 (Subpart J) explains the administrative review process under Title II of the Social Security Act.  20 C.F.R. §§ 416.1400-1499 (Subpart N) explains the administrative review process under Title XVI of the Social Security Act.  For the purposes of the instant motion, these processes are identical.

[8]    If a claimant is solely challenging the controlling law on constitutional grounds, he may forgo the third and fourth steps and proceed directly to judicial review in district court via the expedited appeals process.  *See* 20 C.F.R. §§ 404.900(a)(6), 416.1400(a)(6).

subject to administrative and judicial review." 20 C.F.R. §§ 404.902,

416.1402.[9] The Commissioner's regulations explain that administrative

actions that are not initial determinations may still be reviewed by the SSA, but

are not subject to administrative or judicial review. *Id.* §§ 404.903, 416.1403.

The regulations proceed to provide illustrative, but not exhaustive, lists of

administrative actions that are initial determinations and administrative

actions that are not initial determinations. *See id.* §§ 404.902, 404.903,

416.1402, 416.1403.

Allowing the SSA to conduct the full review process set out in the

Commissioner's regulations prevents "premature interference with agency

processes, so that the agency may function efficiently and so that it may have

an opportunity to correct its own errors, to afford the parties and the courts the

benefit of its experience and expertise, and to compile a record which is

adequate for judicial review." *Weinberger*, 422 U.S. at 765.

**B.    Application**

   **1.    The Action Challenged Was Not an Initial Determination**

Defendant principally moves to dismiss the Complaint or, in the

alternative, for summary judgment on the grounds that this case does not

present a judicially reviewable decision of the Commissioner. Defendant

argues that the agency's determination on an allegation of nonreceipt of

monthly benefit payments is not an initial determination subject to the

---

[9]     The second, third, and fourth steps of the SSA administrative review process —
        reconsideration, ALJ decision, and Appeals Council review — are not at issue in this
        case.

administrative review process or court review.  (Infiesta Decl. ¶ 14).  The Court agrees and thus dismisses this action; the Court lacks jurisdiction to hear it. *See, e.g.*, *Colman* v. *Sec. of HHS*, No. 94 Civ. 6282 (MAT), 1994 WL 808125, at *2 (W.D.N.Y. Nov. 28, 1994) ("In this case, plaintiff seeks judicial review of the SSA's decision not to grant him an extension of time to seek reconsideration.... The SSA's decision is not reviewable by this Court and plaintiff has raised no colorable constitutional claim which would otherwise confer subject-matter jurisdiction upon this Court.").

An initial determination is the first of four steps required to exhaust the administrative agency review process and produce a judicially reviewable final decision.  20 C.F.R. §§ 404.900, 416.1400; *see Califano* v. *Sanders*, 430 U.S. 99, 102 (1977) ("The Act and regulations thus create an orderly administrative mechanism, with district court review of the final decision of the [Commissioner].").  "Administrative actions that are not initial determinations may be reviewed by [SSA], but they are not subject to the administrative review process … and they are not subject to judicial review."  20 C.F.R. § 404.1403(a); *see Long Island Ambulance, Inc.* v. *Thompson*, 220 F. Supp. 2d 150, 160 (E.D.N.Y. 2002) ("The first agency action at issue in this case is the decision to suspend Medicare payments to LIA. According to the Medicare regulations, such a decision is not a final agency decision.  As such, this Court does not have subject matter jurisdiction to hear the plaintiffs' challenge to the decision." (internal citations omitted)).

As noted, the Commissioner's regulations provide non-exhaustive lists of agency decisions that are initial determinations and agency decisions that are not initial determinations.  20 C.F.R. §§ 416.1402, 416.1403.  Neither list specifically categorizes a determination concerning an allegation of nonreceipt of monthly benefit payments.  Plaintiff might argue that her case is analogous to a determination concerning "[a]ny overpayment or underpayment of your benefits," which the regulations classify as constituting an initial determination subject to administrative and judicial review.  *See id.* § 416.902(j).  An allegation of nonreceipt of monthly payments could conceivably be considered an allegation of underpayment of benefits.

But that analogy is flawed, and the flaw demonstrates exactly why this determination is not an "initial determination" for the purposes of the Court's review.  An allegation of underpayment of benefits, like the other determinations listed in § 404.902 and its Title XVI analogue, § 416.1402, are substantive determinations related to a claimant's eligibility for benefits and how those benefits should be calculated and applied.  Those determinations relate, for example, to whether the SSA properly determined a claimant's benefits status and did everything legally required to ensure that a beneficiary actually received and enjoyed the payments to which she was entitled.  *See, e.g.*, 20 C.F.R. § 404.902(a) ("Your entitlement or your continuing entitlement to benefits"); *id.* § 416.1402(o) ("Whether we were negligent in investigating or monitoring or failing to investigate or monitor your representative payee, which resulted in the misuse of benefits by your representative payee.").  It is sensible

16

that such actions are subject to extensive, multi-tiered review.  They impact the very status of claimants and beneficiaries with respect to the SSA.  They are considered in the context of clear, well-codified standards, the proper application of which can be assessed on review.  And though determined against the facts of a specific claim or dispute, they ultimately require the exercise of an analytical judgment that can be in error and, when erring, should be corrected.

The actions specifically identified as not initial determinations, in contrast, are quite different.  They are actions related to the administration of SSA's affairs, not substantive determinations of a claimant's status and the nature of his benefits.  These actions include, for example, determining the amount of withholding appropriate to recover an overpayment of benefits, 20 C.F.R. § 404.903(e), or denying a request to use an expedited appeals process, *id.* § 416.1403(a)(4).  To be clear, actions insulated from judicial review are not without meaningful effect on claimants: they include suspending the payment of benefits when investigation into potential offset income is necessary, *id.* § 404.903(a), determining whether provisional benefits should be paid, *id.* § 404.903(w), denying requests to reopen previous final determinations, *id.* § 416.1403(a)(5), and determining how to effect recovery of overpayments, *id.* § 416.1403(a)(17), (19).  But irrespective of how beneficiaries may be affected by such decisions, their character is fundamentally different from those actions identified as eligible for review.  They are focused on issues such as the timing of the receipt of benefits or the mechanism by which overpayments or offsets

17

are withheld or collected.  *See* 20 C.F.R. § 404.903(a), (b), (e), (h), (m), (p), (s), (u), (v), (w).  They relate to the convenience for both parties of specific approaches to the claim and benefits process.  *See id.* § 404.903(i), (j), (k), (x), (y), (z).

In sum, actions that are not "initial determinations" are largely factual and procedural, rendered with little if any guidance from bodies of regulatory, statutory, and decisional law.  Neither an ALJ, the Appeals Counsel, nor a court asked to review such a determination could profitably assess the process by which it was reached except by coming to a new, independent decision about what should have been done in a particular situation.  But the review provided for by the Social Security Act and the Commissioner's regulations is not designed simply to second-guess decisionmakers one step earlier in the process.  It is designed to determine whether objective standards were correctly and justly applied.  As Judge Friendly explained in reference to the plaintiffs in a Social Security appeal 30 years ago,

> Mercer's and Havens' claims for Medicare benefits were the paradigm of those where resort to the internal procedures of the SSA should be required.... Mercer and Havens were asking [the Commissioner to enforce his regulations]. As a result, not only did they receive the benefits they claimed but the procedural defaults of which they complained were acknowledged to be deviations from established agency regulations and were corrected.

*Mercer* v. *Birchman*, 700 F.2d 828, 832 (2d Cir. 1983).

Some SSA actions that have real impact on claimants and beneficiaries are simply not eligible for administrative and judicial review.  And though indisputably frustrating for the individuals involved, and even for the

18

administrators and judges charged with enforcing the Commissioner's regulations, there are good reasons for that limitation.  Opening every decision of the Commissioner up to the full process of administrative and judicial review would come at a very high price.  It would dramatically slow the Commissioner's ability to process claims and administer the distribution of benefits to entitled individuals.  It would impose significant new costs on the SSA as a whole and, consequently, on claimants and beneficiaries who in turn received less efficient resolution of their claims and disputes.  And it would clog the courts with multiple appeals for review of agency actions that are fundamentally procedural in nature, arising not from grievances regarding entitled payments, but from the SSA's conduct of issues entirely separate from those grievances.

Plaintiff's claim here should, for the same reasons, be immune from administrative and judicial review.  Careful examination of the content of that claim reveals that it is more akin to the actions identified in § 404.903 and § 416.1403 than to those identified in § 404.902 and § 416.1402, and so appropriately beyond the scope of the review process.  Unlike, for example, a dispute over an alleged underpayment of benefits, *see* 20 C.F.R. § 404.902(j), Plaintiff here does not claim money to which the Commissioner insists she is not entitled.  To the contrary, Plaintiff alleges that she did not *receive* money to which all parties agree she was entitled and which the Commissioner maintains was properly distributed.  This is a critically different kind of complaint: not that the SSA applied its regulations incorrectly or violated the

law or infringed on Plaintiff's rights and entitlements, but that a certain amount of money was misplaced on its way from the SSA to Plaintiff.

Viewed in this light, it makes sense that the SSA does not regard decisions regarding whether individual beneficiaries are owed replacement checks or direct-deposit transfers as initial determinations for purposes of review. A decision regarding whether to provide a replacement check is not a determination regarding the beneficiary's status or the SSA's payment obligations. It is a straightforward investigation into the history of specific checks or wire transfers. Just as with the actions explicitly excluded from the review process by regulation, Plaintiff's application here is exclusively factual, focused only on whether specific payments were made successfully. Resolving this dispute requires no more than confirming whether a check was appropriately cashed or a specific electronic transfer properly deposited. The Commissioner is eminently more capable of conducting such confirmation than the Court. What is more, there are simply no useful standards to apply in assessing whether such confirmation, if classed as an initial determination, was properly made. And the Court, on review, could do no more than conduct an independent assessment of the record regarding the contested checks or wire payments and make separate factual findings as to each.[10] This is simply not the kind of decision that should be subject to the full panoply of review mechanisms.

---

[10]    Performing such an assessment would be especially bizarre and counterproductive where, as here, a beneficiary has filed a claim form explicitly acknowledging that she received and cashed the checks at issue. (*See* Infiesta Decl. Ex. 4).

As the Commissioner correctly hastens to point out, this is not to say that beneficiaries claiming nonreceipt of certain payments have no way to vindicate their grievances.  The SSA's Program Operations Manual System ("POMS") sets out the process by which SSA employees evaluate requests for replacement checks in circumstances such as these.  *See Schweiker* v. *Hansen*, 450 U.S. 785, 789 (1981) (noting that the POMS "is not a regulation. It has no legal force, and it does not bind the SSA.  Rather, it is a 13-volume handbook for internal use by thousands of SSA employees, including the hundreds of employees who receive untold numbers of oral inquiries like respondent's each year.").  Defendant, in its brief, submits that the relevant POMS provision, NL 03001.025,[11] explains "that the beneficiary who claims non-receipt is sent a notice of the determination with right to seek review, but not grant of further review." (Def. Br. 7).  The cited provision is admittedly far from clear.  Nor did Defendant offer much direction on what portion of POMS NL 03001.025 could be read to support its assertion.

However, on review, the Court agrees with Defendant's characterization. NL 03001.025 instructs SSA employees, when responding to a request for check replacement, to use the following paragraph when concluding that the beneficiary is not entitled to a replacement check:

> If you disagree with our decision, you can ask us to look at the information that we have about the check(s) again.  A person who did not look at this information the first time will review it.  We will also consider any new facts you have.  Contact us right away, if you want us to review this information.

---

[11]   At the time Defendant filed her moving papers, the relevant language was contained in POMS GN 02401.925.

POMS NL 03001.025.B, *available at*

https://secure.ssa.gov/apps10/poms.nsf/lnx/0903001025 (last visited May

12, 2014).  This language does, as Defendant suggests, implicitly indicate that

the SSA views decisions regarding check replacements as decisions that "may

be reviewed by [the SSA], but … [are] not subject to the administrative review

process … [or] to judicial review."  20 C.F.R. § 404.903.  If the converse were

true, the relevant paragraph would inform the beneficiary of her right to seek a

reconsideration and ultimately to receive a hearing before an Administrative

Law Judge.  That this paragraph makes no reference to the review process

bolsters Defendant's characterization of this claim as beyond administrative

and judicial review.

Several acts of SSA employees, however, give the Court pause because of

their at-least-arguable inconsistency with this construction.  First, when

Plaintiff protested in person on June 5, 2009, that she had not received certain

benefit checks, SSA employee Tahirhagos gave Plaintiff a formal Request for

Reconsideration form to complete in accordance with the administrative review

process.  *See* Infiesta Decl. Ex. 2; *see also* 20 C.F.R. §§ 404.907-404.921,

416.1407-416.1421.  N. Tahirhagos then recorded the following remarks:

> The Laconia office apparently has already processed the nonreceipt
> complaints but [Plaintiff] does not agree with the outcome so far.
> She insisted to file a recon[sideration] but I could not give her any
> valid determination date . . . . I am filing a recon[sideration] for her
> for your review so that we can go from there.

(Infiesta Decl. Ex. 1).

Thus, Tahirhagos, acting as an agent of the SSA, apparently believed that Plaintiff had received an initial determination and could proceed with the administrative decision process (though this employee noted that it was impossible to identify a date on which the initial determination was made). Further, Anne Jacobosky, SSA Assistant Regional Commissioner, Processing Center Operations, indicated in a letter to Plaintiff dated January 13, 2010, that Plaintiff had 30 days from the date of the letter to refile "a reconsideration of the determination made." (Jacobosky Letter ¶ 1).  And finally, internal SSA documentation dated July 6, 2010, indicates that Plaintiff's request for reconsideration dated February 4, 2010, was slated for processing.  (Infiesta Decl. ¶ 9 & Ex. 1)

Plaintiff might plausibly argue from these statements that Defendant is estopped from contending now that Plaintiff was never able to proceed with the administrative process at all because her claim simply falls outside its scope. This is all the more attractive an argument given that none of these responses apparently comports with the POMS instruction regarding how to handle requests for replacement checks.  But "the POMS are internal SSA policy manuals, and as such, have no legal force."  *Briller* v. *Barnhart*, No. 04 Civ. 3649 (RWS), 2005 WL 2403857, at *9 (S.D.N.Y. Sept. 29, 2005).  And "misrepresentations by a governmental official do not bind the government or excuse noncompliance with a statutory requirement."  *Chukwueze* v. *NYCERS*, 891 F. Supp. 2d 443, 452-53 (S.D.N.Y. 2012).

These statements, even if construed as misrepresentations, were likewise insufficiently improper to impair the normal operation of the Commissioner's regulations.  That is, even had SSA employees affirmatively assured Plaintiff that her claim was subject to the review process, Plaintiff would nonetheless still be unable to seek administrative and judicial review on this claim.  *Cruz* v. *Apfel*, 48 F. Supp. 2d 375, 379 (S.D.N.Y. 1999) ("[T]he SSA could not now be estopped even if an employee of the SSA had responded to her request and assured [the plaintiff] that [an improper approach] would be effective."); *see Schweiker*, 450 U.S. at 789-90 ("If Connelly's minor breach of such a manual suffices to estop petitioner, then the Government is put 'at risk that every alleged failure by an agent to follow instructions to the last detail in one of a thousand cases will [estop it as well].'" (quoting *Hansen* v. *Harris*, 619 F.2d 942, 956 (2d Cir. 1980) (Friendly, J., dissenting), *rev'd sub nom. Schweiker*, 450 U.S. 785)).

Nor is this a circumstance in which the Court should take jurisdiction over a determination without regard for the jurisdictional role of the review process.  Though, as discussed above, Plaintiff's claim here does not go to her status as a beneficiary, it emphatically is not "collateral" to a claim for benefits: the dispute is about whether Plaintiff will get a sum of money she demands. *Mathews*, 442 U.S. at 330.  Second, there is no constitutional claim at issue here at all.  The Court simply may not review a claim, like Plaintiff's here, that does not arise from an initial determination of the Commissioner.  *Colman*, 1994 WL 808125, at *2 ("The SSA's decision is not reviewable by this Court

and plaintiff has raised no colorable constitutional claim which would otherwise confer subject-matter jurisdiction upon this Court.").[12]

At a higher level of abstraction, the Supreme Court has instructed that courts considering whether they should hear Social Security appeals outside the normal sequence of the administrative review process "should also be guided by the policies underlying the exhaustion requirement." *Bowen*, 476 U.S. at 484. That guidance dictates that the Court should not examine Plaintiff's claim. "Exhaustion is the rule, waiver the exception. This is so because of a variety of prudential and separation-of-powers concerns." *Abbey*, 978 F.2d at 44. As "an expression of executive and administrative autonomy," *McKart*, 395 U.S. at 194 (internal quotation marks and citation excluded), "one of the doctrine's principal purposes," *Abbey*, 978 F.2d at 44, is "preventing premature interference with agency processes, so that the agency may function efficiently," *Weinberger*, 422 U.S. at 765. But intervening here would obstruct those goals in a serious way and at an unusually high cost. First, the Court would be compelled to assess the Commissioner's decision here absent any meaningful guidance regarding how to do so. Even worse, permitting Plaintiff

---

[12]   Other judicially identified routes by which courts may take jurisdiction of claims otherwise not properly considered are not relevant here. For example, the Second Circuit has explained that exhaustion of administrative process is not necessary where such exhaustion would be futile because the challenge is to a regulation or statute "which the agency has either no power, or no inclination, to correct." *Abbey* v. *Sullivan*, 978 F.2d 37, 45 (2d Cir. 1992). Alternatively, exhaustion may be waived when an agency refused to permit a claimant to obtain the administrative process he seeks. *See Skubel* v. *Fuoroli*, 113 F.3d 330, 334-35 (2d Cir. 1997). Finally, claimants may go to court instead of continuing to pursue administrative remedies when doing so would risk irreparable harm. *Mathews*, 424 U.S. at 332. But all these are exceptions to the requirement of administrative exhaustion. This case poses a different problem entirely: whether the administrative review process was ever triggered at all. It was not.

to maintain her suit would constitute a serious invasion of the Executive's capacity to conduct its own affairs, and could provide a basis — though necessarily a slim one — for many other claimants and beneficiaries to contend that they too should be able to obtain judicial review of a host of procedural, factual determinations essential to the Commissioner's efficient conduct of the SSA's important work.

In short, the Court does not have jurisdiction over Commissioner's refusal to provide replacement checks to Plaintiff.  The Court is sympathetic that this conclusion leaves Plaintiff with no recourse other than to request the non-binding review offered in the Jacobosky Letter.  Plaintiff could understandably, in this circumstance, nonetheless petition the Court to overlook the statutory and regulatory bars against this action.  But "'[e]quitable considerations and the court's regret for the misfortune of the applicant cannot govern over the express provisions of the Act.'"  *Morton* v. *Barnhart*, No. 02 Civ. 4166 (WHP) (AJP), 2003 WL 1856530, at *9 (S.D.N.Y. Apr. 22, 2003) (report and recommendation) (quoting *Fangman* v. *Gardner*, Civ. No. 02798, 1968 WL 2138 at *3 (D. Neb. Mar. 13, 1968), *adopted in* SSR 68-68c, 1968 WL 3969, at *3 (S.S.A. 1968)).  The Commissioner's decision here was not an initial determination, and so Plaintiff was not eligible even to seek administrative review, much less the review of this Court.  *See Coles* v. *Astrue*, No. 10 Civ. 4751 (JFB), 2012 WL 695849, at *4-5 (E.D.N.Y. Mar. 5, 2012) ("A denial of a request to reopen a determination or decision is an administrative action and it is not an initial determination.  20 C.F.R. § 416.1403….  Accordingly, this

26

Court is precluded from reviewing the decision not to reopen the November 9, 2000 determination.").

### 2.     Mandamus Jurisdiction

In making every conceivable accommodation for Plaintiff's *pro se* status, the Court has considered other arguments that could, in theory, provide Plaintiff with a mechanism for recovery here.  Although neither party addresses the issue in their court filings, another alternative argument is that the Court has mandamus jurisdiction.  After reviewing the relevant law and the instant record, the Court concludes that mandamus jurisdiction is unavailable.

Mandamus jurisdiction enables a district court "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  It "is an extraordinary remedy," *Aref* v. *United States*, 452 F.3d 202, 206 (2d Cir. 2006), and will only be granted if the following three conditions are met: "[i] a clear right in the plaintiff to the relief sought; [ii] a plainly denied and peremptory duty on the part of the defendant to do the act in question; and [iii] no other adequate remedy [is] available." *Lovallo* v. *Froehlke*, 468 F.2d 340, 343 (2d Cir. 1972).  Here, neither the first nor the second criterion is satisfied.  Plaintiff has no right to administrative review of her claim because it was not an initial determination.  And for the same reason, the Commissioner has no duty to offer Plaintiff more process than she has already received.  Though SSA confessedly has not processed Plaintiff's request for reconsideration, it is not the case that the Commissioner is denying Plaintiff administrative process for no reason other than

27

disorganization or recalcitrance.  Just the opposite:  Plaintiff's request remains unprocessed because the Commissioner concludes, and the Court now agrees, that no formal reconsideration was ever available to Plaintiff for a dispute about whether certain checks and direct deposit payments were properly transferred to Plaintiff's custody.  Mandamus jurisdiction is not appropriate where the Court has already ruled that the Commissioner was correct to forgo any further administrative review for Plaintiff's claim.

## CONCLUSION

For the reasons set out above, Defendant's motion is GRANTED.  The Court understands that Plaintiff will likely find this result unsatisfying.  But it is simply not permitted for the Court to reexamine a determination of the Commissioner that is not of a type eligible or suitable for administrative or judicial review.

The Court suggests that the Commissioner consider, given Plaintiff's assiduous efforts over many years to protest the nonreceipt of which she complains here, whether it may be equitable and appropriate to conduct the optional, non-reviewable reexamination offered in the first sentences of 20 C.F.R. §§ 404.903 and 416.1403(a).  It may provide Plaintiff with some comfort to receive a written explanation of the basis for the Commissioner's conviction that the payments at issue were properly made.  If the Commissioner elects to do so, however, the provision of such an explanation will not render Plaintiff's claim eligible for administrative or judicial review.

The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 12 and to close the case.

SO ORDERED.

Dated:     May 12, 2014
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

---

*A copy of this Order was mailed by Chambers to:*

Ena Dobson                          Ena Dobson
1514 Metropolitan Avenue            1723 White Plain Road
Apt 2A                              Bronx, NY 10462
Bronx, NY 10462